Mark Gomez, Esq. (SBN 289164)
Susan Murphy Esq. (SBN 185335)
GOMEZ LAW, APC
3250 Wilshire Blvd., Suite 1901
Los Angeles, CA 90010
T (855) 219-3333/ F (818) 574-6730
sm@gomezlawla.com
info@gomezlawla.com

Attorney for Plaintiff,
ANTHONY GIBSON

## CALIFORNIA CENTRAL DISTRICT COURT
## RIVERSIDE CALIFORNIA – GEORGE E. BROWN JR. COURTHOUSE

| | |
|---|---|
| ANTHONY GIBSON, *an individual*<br><br>Plaintiff,<br><br>vs.<br><br>NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING, a Delaware limited liability company and DOES 1 through 20, Inclusive;<br><br>Defendants. | Case No:<br><br>**VERIFIED COMPLAINT FOR:**<br>**(1) NEGLIGENCE;**<br>**(2) INTENTIONAL MISREPRESENTATION CAL. CIV. CODE §1709; §1710(1);**<br>**(3) PROMISSORY ESTOPPEL; AND**<br>**(4) VIOLATION OF THE BUSINESS AND PROFESSIONS CODE §17200** |

COMES NOW Plaintiff Anthony Gibson by and through his counsel to complain against Defendant NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING, a Delaware limited liability company (SHELLPOINT) for Negligence, Intentional Misrepresentation, Promissory Estoppel, and violation of

the Business and Professions Code §17200 regarding the property at 4928 Clover Place, Rancho Cucamonga California 91737 (Clover Place) for: 1) knowingly deceiving plaintiff into believing he was entitled to a deferment and forbearance and/ or modification for over two years, and 2) recorded a Notice of Default prior to loss mitigation as required by .

## **INTRODUCTION**

1.      Normally, a mortgage servicer does not owe a duty of care to a borrower sufficient to support a negligence claim simply because they don't modify his loan, except, in situations such as here where the servicer makes false promises upon which the borrower relies, falsifies compliance with the foreclosure statutes, and then pulls the rug out at the last minute after recording a notice of default so that the borrower has no options left to refinance.

2.      In this case, Defendant SHELLPOINT used the camouflage of Covid 19 relief to stop accepting Plaintiff's ACH payments all the while knowing that he: 1) was not eligible for Covid relief by forbearance and deferment, and 2) he was not eligible for other forms of modification because of his equity to debt ratio. Defendant did this while enticing Plaintiff to believe that he was eligible for loss-mitigation so he would forgo refinancing, which his credit and equity would have allowed him to do, encouraging him to allow his arrears to build up in reliance on a modification from Defendant, and then slapping with a Notice of Default before they actually conducted a review or gave him a denial of his eligibility.

3.     After suspending his payments, which Defendant SHELLPOINT knew would not result in forbearance and deferment or modification, after allowing Plaintiff to rely *for over two years* on their promises of forbearance and deferment and/ or modification neither of which he was eligible for, Defendant SHELLPOINT also recorded a Notice of Default with a *fabricated* Declaration of Due Diligence by someone Plaintiff never spoke with that claimed that loss mitigation  communication with Plaintiff had occurred even though such review did not occur until two months later.

## LEGAL DESCRIPTION

4.     The real property known as 4928 Clover Place, Rancho Cucamonga California 91737 (Clover Place) that is the subject of this complaint is a single-family home in the City of Rancho Cucamonga, County of San Bernardino, State of California, described as follows:

> LOT 47 OF TRACT 12332-1, IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 174, PAGES 34 THROUGH 39 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
>
> APN: 1074-311-20-0-000." (**Exhibit A [Grant Deed 3-9-1998]**.)

## JURISDICTION AND VENUE

5.   This Court has proper jurisdiction over this matter as the acts giving rise to the allegations herein occurred, or failed to occur, in the City of Rancho Cucamonga, State of California. (*Cal. Code of Civil Procedure §760.040(a).*)   This Court has

federal diversity jurisdiction pursuant to 28 U.S. Code §1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs and is between citizens of different states. 28 U.S. Code §1332(a)(1).

## **PARTIES**

6.     Plaintiff, Anthony Gibson is the owner of Clover Place by grant deed. (**Exhibit A [Grant Deed 3-9-1998]**.)

7.     Defendant NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING, a Delaware limited liability company (SHELLPOINT) is the mortgage servicer servicing this loan with its principle place of its servicing business located in Greenville South Carolina. New Residential Mortgage LLC (Newrez) and its owner New residential Investment Corporation each have a principle place of business in New York. Shellpoint Mortgage Servicing provides mortgage loan servicing for institutional clients investing in portfolios of non-performing, re-performing and sub-performing residential mortgage loans. It is based in Greenville, South Carolina.

8.     Plaintiff does not know the true names, capacities, or basis for liability of defendants sued as Does 1 through Doe 20. Each fictitiously named Defendant is in some manner liable to the Plaintiff, or claims some right, title or interest in Clover Place.

//

## GENERAL ALLEGATIONS

9.      On March 9, 1998 Plaintiff purchased Clover Place. (**Exhibit A [Grant Deed 3-9-1998]**.)

10.     On June 7, 2007, Plaintiff refinanced his mortgage on Clover Place with a predatory subprime mortgage from Countrywide, dba America's Wholesale lender, in the amount of $1,050,000. (**Exhibit B [Deed of Trust 6-7-2007].**)

11.     In 2011, like many Americans that had received toxic loans in 2007, Plaintiff sought out and received a loan modification from Bank of America. (**Exhibit C [loan mod 7-19-2013]**.) Also, like many Americans, Plaintiff's loan modification had included a trial payment plan (TPP) and pursuant to this agreement Plaintiff had made three trial payments of $5,245.33 between 2011 and 2012. (**Exhibit C [loan mod 7-19-2013 p. 3/8]**.)

12.     In his communications with Bank of America in December 2011, Plaintiff wondered why he received a 1098 for 2011 that did not include his trial payments, and a representative of Bank of America Tammy Tipton assured him that his payments would be credited to his account in 2012 after he had completed his three-month trial. (**Exhibit D [Email Shellpoint 12-21-2011]**.)   Plaintiff also wanted to be sure that his trial payments were being applied to his outstanding balance since he did not see the payments reflected on his statement. (**Exhibit D [Email Shellpoint 12-21-2011]**.)

13.     Around 2017, Bank of America sold Plaintiff's servicing rights to Bayview servicing. (**Exhibit O [Mortgage Summary 11-11-2022]**.)  Also in 2017, Bayview began reporting Plaintiff with a 60-day delinquency which Plaintiff was not aware of at the time, but which Plaintiff now believes was a result of Bayview not crediting his trial payments pursuant to the TPP.  Between his loan modification in 2013, and 2017 when the servicing changed to Bayview, Plaintiff was not delinquent in any payments.

14.     In early 2020, just before the Pandemic hit, Plaintiff alleges that Bayview Servicing sold the servicing rights Plaintiff's loan to Defendant SHELLPOINT and the improper 60-day delinquency carried over. Plaintiff is informed, believes, and thereupon alleges that Defendant SHELLPOINT was aware of this delinquency and, in fact, purchased Plaintiff's servicing right precisely *because* of this delinquency since Defendant SHELLPOINT specifically invests in "non-performing, re-performing and sub-performing residential mortgage loans" for purposes of benefitting from foreclosure.[1]  Because non-performing or sub-performing loans are the only loans for which Defendant SHELLPOINT purchases servicing rights, Plaintiff is informed and alleges that Defendant knew on March 30, 2022 that Plaintiff had an existing delinquency and therefore was ineligible for forbearance and deferment and/ or modification.

---

[1] CB Insights, "About Shellpoint Mortgage Servicing," available online at: https://www.cbinsights.com/company/shellpoint-mortgage-servicing

15.     On March 30, 2020, not knowing about his falsely reported delinquency, Plaintiff applied for and received a notice that he was approved for a forbearance by Defendant SHELLPOINT. (**Exhibit E [email 3-30-2020]**.)  At the time of this "approval" Plaintiff is informed and alleges that Defendant SHELLPOINT knew that Plaintiff did not qualify, according to Defendant SHELLPOINT's criteria, for any forbearance deferment or modification; firstly because of his delinquency and second because his net equity to debt ratio was too high for modification and could only be refinanced. Pursuant to this forbearance relief for which Defendant knew Plaintiff was not entitled, Defendant SHELLPOINT stopped accepting Plaintiff's mortgage payments in April 2020.  Defendant SHELLPOINT then let Plaintiff's arrears build and did not request a payment until June 2022, at which time Defendant demanded **$221,927.91** which was payment in full for 2+ years of mortgage payments. (**Exhibit E [email 3-30-2020]; Exhibit G [Notice of Default 9-8-2022]**.)

16.     On March 30, 2020, when Shellpoint suspended ACH withdrawals on Plaintiff's account pursuant to *approving* him for a forbearance, Defendant SHELLPOINT was aware of two facts which were 1) Plaintiff did not qualify for loan modification because there was over $1M ($1,000,000.00) in equity on Clover Place and 2) Plaintiff did not qualify for Covid forbearance and deferment because he had an existing delinquency. (**Exhibit E [email Shellpoint 3-30-2020]; Exhibit H [email Gibson 11-18-2022]**.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17.     On March 30, 2020, along with suspending acceptance of Plaintiff's payments, the approval letter that Defendant SHELLPOINT provided only vague generic promises that at the end of the period Defendant would *"evaluate you for additional options… which could include a repayment plan or possibly a loan modification … to bring your loan current."* (**Exhibit E [email Shellpoint-3-30-2020]**.)  Defendant gave no warning that Plaintiff would be able to suspend his payments (forbearance) but would not be able to add these payments to the end of his loan (deferment) because his delinquency disqualified him. (**Exhibit O [Mortgage Summary 11-11-2022]**.)  They gave no indication that his high equity to debt ratio, equity acquired in the nine years since his loan modification, disqualified him for another loan modification. (**Exhibit C [loan mod 7-19-2013]**; **Exhibit N [email Shellpoint 11-23-2022]**.)  Defendant gave no inkling that the entire *forbearance* amount would have to be paid back in one lump sum without any deferment to the end of his loan which is what they actually demanded on September 8, 2022. (**Exhibit K [Notice of Default 9-8-2022].)**  On March 30, 2020, at the time they suspended Plaintiff's payments, according to Defendant SHELLPOINT**'**s own criteria, and by what they knew according to their own business model, Plaintiff was not eligible for any loss mitigation whether deferment or modification. (**Exhibit E [email Shellpoint-3-30-2020]**.)

18.    In June 2021, Plaintiff received notice that his forbearance was coming to an end and he began trying to call his single point of contact Anna Hernandez (Hernandez).

19.    In July 2021, Plaintiff received another notice that his forbearance was coming to an end and this time Hernandez responded to him. (**Exhibit F [Hernandez email 7-30-2021].**)  Hernandez told Plaintiff by email that an extension of his *forbearance* was granted and he also received a letter saying the same. (**Exhibit F [Hernandez email 7-30-2021]; Exhibit G [Hernandez letter 8-6-2021].**)  In this forbearance agreement Defendant SHELLPOINT promised that at least 30 days prior to the end of the Forbearance Plan, they would send Plaintiff a Borrower's Solution Package requesting financial information and documentation of his financial circumstances and that they would provide information about alternatives that might be available to him at the end of the forbearance plan term, such as a reinstatement, deferment, repayment plan or other alternatives to foreclosure. (**Exhibit G [Hernandez Letter 8-6-2021].**) This language was consistent with California Civil Code 2923.5 (a)-(g) which requires communication with a borrower regarding mitigation options *prior* to recording a Notice of Default. (**Exhibit G [Hernandez Letter 8-6-2021]; Exhibit K [Notice of Default 9-8-2022].**)

20.    On October 18, 2021, Plaintiff received a generic email from Defendant SHELLPOINT that his forbearance was coming to an end which contradicted what

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hernandez said in her email and letter. (**Exhibit H [Shellpoint email 10-18-2022];
Exhibit F [Hernandez email 7-30-2021]; Exhibit G [Hernandez letter 8-6-
2021].**) Confused, Plaintiff went on the SHELLPOINT website and made a
payment for November 2021. (**Exhibit H [Mortgage statement 10-31-2021]**.)  On
November 23, 2021, Plaintiff received another generic email from Defendant
SHELLPOINT which also said his forbearance had been completed. (**Exhibit I
[Shellpoint email 11-23-2021]**.)  After making his November payment, Plaintiff
logged onto his account with Defendant SHELLPOINT and saw through the portal
that he could extend his forbearance for another six months and Plaintiff chose that
option.

21.	Around December 1, 2021, Plaintiff realized that there had been a
delinquency on his mortgage reporting since prior to the pandemic and he emailed
Defendant SHELLPOINT's agent Ann Hernandez about this, but she never told
him that this disqualified him for forbearance/ deferment according to Defendant's
criteria and stopped responding to him. (**Exhibit O [Mortgage summary 11-11-
2022]; Exhibit R [Hernandez email 12-1-2021]**.)

22.	On June 22, 2022, Plaintiff received another generic notice from Defendant
SHELLPOINT that his "forbearance plan" had been completed. (**Exhibit J [email
Shellpoint-6-22-2022]**.) In another correspondence Defendant SHELLPOINT
assigned Plaintiff a single point of contact named Barbara Lewis who did not
answer her phone and never called him back or answered emails.  A month passed,

and then another, with no response from Ms. Lewis. Plaintiff was never sent a "Borrower's Solution Package" or provided with information about alternatives to foreclosure as promised the year before. (**Exhibit G [Hernandez Letter 8-6-2021].**)

23.     Starting in June 2022, and continuing through July and August, when Plaintiff could not get through to Barbara Lewis, he began calling other agents of Defendant SHELLPOINT and filling out and uploading documents as they requested including a Uniform Borrower's Assistance Form, a Non-Borrower Contribution Form, a Taxpayer Consent Form and a Profit & Loss worksheet form. Plaintiff had to get these documents sent to him because he was locked out of Defendant's system.

24.     On September 8, 2022, Defendant SHELLPOINT recorded a Notice of Default. (**Exhibit K [Notice of Default 9-8-2022]**.)  This Notice of Default contained a Declaration of Due Diligence by Loss Mitigation Specialist *Xinh Dinh*, someone Plaintiff never spoke to, claiming that Plaintiff had been contacted to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" *prior to August 17, 2022*. (**Exhibit K [Notice of Default 9-8-2022]**.)  This language was similar to the promise in the August 6, 2021 letter when Defendant SHELLPOINT promised that they would send Plaintiff a "Borrower's Solution Package" and provide him with information about alternatives to foreclosure, but that never happened either before or after that Due

Diligence Declaration and Notice of Default was recorded. (**Exhibit K [Notice of Default 9-8-2022]; Exhibit G [Hernandez Letter 8-6-2021].**)  Plaintiff had not been evaluated by his single point of contact Barbara Lewis, or *anyone,* for any loss mitigation option prior to Defendant SHELLPOINT recording that Due Diligence Declaration and Notice of Default. (**Exhibit K [Notice of Default 9-8-2022].**)

25.    On October 17, 2022, Plaintiff managed to get a new point of contact, Defendant SHELLPOINT's agent Larry Curtis, who was not his *single point of contact,* but who was responsive to his emails.

26.    On October, 21, 2022, Defendant SHELLPOINT's agent Larry Curtis requested documents from Plaintiff as if he were still being evaluated for a modification. (**Exhibit L [email Shellpoint 11-23-2022]**.) This was six weeks after the Notice of Default was recorded. (**Exhibit K [Notice of Default 9-8-2022].**)

27.    On *October 25, 2022*, almost seven weeks after the Notice of Default was recorded, Plaintiff came the closest to an "initial evaluation" such as was promised in the August 6, 2021 letter when Defendant SHELLPOINT's agent Larry Curtis simply told Plaintiff he was ineligible for any mortgage relief. (**Exhibit K [Notice of Default 9-8-2022]**; **Exhibit N [email Shellpoint 11-23-2022].**)     It was on *October 23, 2022* that Defendant SHELLPOINT's agent Larry Curtis finally told Plaintiff two things that were known to Defendant SHELLPOINT from the time

they sent the first *approval* letter to Plaintiff on March 30, 2020 when they suspended accepting his payments which were: 1) that Plaintiff did not qualify for loan modification because there was over $1M ($1,000,000.00) in equity on Clover Place and 2) Plaintiff did not qualify for Covid deferment to the back end of his loan because he had an existing delinquency of 60 days at the beginning of the pandemic. (**Exhibit E [email Shellpoint 3-30-2020]; Exhibit M [email Gibson 11-18-2022]; Exhibit O [Mortgage Summary 11-11-2022]**.)  When Plaintiff explained that his income had now substantially returned, Defendant's agent Curtis also told Plaintiff that didn't matter; even if he was earning an additional $30,000.00 per month Defendant, Curtis said, SHELLPOINT wouldn't care because they were only interested in foreclosing given his equity position.

28.     On October 25, 2022, Defendant SHELLPOINT's agent Larry Curtis documented this conversation in an email where he told Plaintiff that an *initial evaluation* had **finally** been conducted and Plaintiff did not qualify for a loan modification. (**Exhibit N [email Shellpoint 11-23-2022]**.) Curtis then told Plaintiff to contact his unreachable single point of contact Barbara Lewis and tossed the hot potato to her. (**Exhibit N [email Shellpoint 11-23-2022]**.)  Plaintiff asked Curtis to document this conversation and he did that in his email of October 25, 2022, but he did *not* document what he had personally told Plaintiff which was that Defendant SHELLPOINT didn't care about Plaintiff's ability to pay and was only interested in foreclosing given Plaintiff's equity position.

29.     On Friday November 15, 2022 Plaintiff spoke to Defendant SHELLPOINT's agent Hernandez and proposed to pay $100,000.00 of his deferred payments immediately if Defendant would agree to add the rest of his arrears onto the end of his loan as additional payments. (**Exhibit M [email Gibson 11-18-2022]**.)  Plaintiff received no response to this offer just as Hernandez had never responded to help fix the mistaken delinquency. (**Exhibit O [Mortgage summary 11-11-2022]; Exhibit R [Hernandez email 12-1-2021]**.)

30.     On November 30, 2022, Plaintiff requested Defendant SHELLPOINT's agent Larry Curtis to postpone any further foreclosure proceedings, specifically the Notice of Trustee's Sale which Defendant might record as soon as December 8, 2020 and Defendant SHELLPOINT told Plaintiff that it would have an answer to his proposal within 10 to 15 days, that time being past the date of December 9, 2022 when a Notice of Trustee's Sale could be recorded. **(Exhibit P [Email Gibson 11-30-2022].)**

31.     On December 8, 2022 Plaintiff received wiring instructions and a request that he *immediately,* within 24 hours, wire $100,000.00 to Defendant SHELLPOINT at which point he would receive "an 18-month deferment." (**Exhibit L [email Shellpoint 12-8-2022]**.)  Along with this demand for $100,000.00 there was no written modification agreement and no explanation of what was meant by "an 18-month deferment." (**Exhibit L [email Shellpoint 12-8-2022]**.)  Finally understanding that he was being encouraged to pay this

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

$100,000.00 to Defendant SHELLPOINT which would then strand him in the same position 18 months from now facing foreclosure, Plaintiff sought counsel.

### FIRST CAUSE OF ACTION
*Negligence*
**(Against Defendant SHELLPOINT)**

32.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

33.    "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institutions involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal.App.3d. 1089, 1096, 2083 Cal. Rptr. 53, 56 (Ct. App. 1991). A financial institution exceeds the scope of a conventional money lender when it "Actively participates" beyond the "normal supervision" applied by a lender in protecting the value of its security interest. *Wagner v. Benson*, 101 Cal. App. 3d 27, 35, 161 Cal. Rptr. 516 (Ct. App. 1980). Defendant SHELLPOINT exceeded the scope of an ordinary lender, and acted negligently, on March 20, 2020 when they cut off Plaintiff's ACH withdrawal and stopped accepting payments from him without evaluating whether he could qualify for any of their programs which they later informed him he did not. *Wagner,* supra at 35; (**Exhibit E [email 3-30-2020]; Exhibit N [email Shellpoint 11-23-2022].)** Defendant SHELLPOINT's intention was to blow past all statutory protections in place to protect Plaintiff as shown by how brazenly they recorded a Notice of Default and

false due diligence declaration without ever evaluating him for loss mitigation.

(**Exhibit K [Notice of Default 9-8-2022].**)

34.     The negligence per se doctrine is codified in Evidence Code §669(a), under which negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. *Alcala v. Vazmar Corp*, 167 Cal. App. 4th 747, 755, 84 Cal. Rptr. 3d 402, 407 (2008).  Defendant SHELLPOINT did not exercise due diligence as laid out in California Civil Code 2923.5 (a)-(g) prior to recording a notice of default and is in violation of that statute. (**Exhibit K [Notice of Default 9-8-2022]**.) The Due Diligence Declaration recorded on September 8, 2022 along with the Notice of Default by Loss Mitigation Specialist *Xinh Dinh*, someone Plaintiff never spoke to, falsely claims that Plaintiff was contacted to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" *prior to August 17, 2022*.  (**Exhibit K [Notice of Default 9-8-2022].**)  Plaintiff's evidence of his emails with Defendant SHELLPOINT's agent Larry Curtis show that an "initial evaluation" did not occur until *October 25, 2022* which was almost two months after the Notice of Default and the Due Diligence

declaration were recorded. (**Exhibit K [Notice of Default 9-8-2022]**; **Exhibit N [email Shellpoint 11-23-2022].**)  When Plaintiff tried to talk to Defendant SHELLPOINT's agent Anna Hernandez about the mistaken delinquency on his account, she not only didn't tell him this disqualified him from a covid forbearance deferment, she stopped communicating with him. (**Exhibit O [Mortgage summary 11-11-2022]; Exhibit R [Hernandez email 12-1-2021]**.)  This intentional deception was in violation of Cal. Civil Code §2923.5 and caused Plaintiff to be squeezed between a Notice of Default already recorded, affecting his ability to borrow money and potentially refinance the debt, and a denial of his right to modify leaving him with no options; leaving him stuck in exactly the kind of trap that Cal. Civil Code §2923.5 was designed to protect against.

35.     The doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Johnson v. Honeywell Internat. Inc.*, 179 Cal. App. 4th 549, 555, 101 Cal. Rptr. 3d 726, 731 (2009). In Plaintiff's case, the standard of care should have been for Defendant SHELLPOINT to approve or deny Plaintiff for modification or forbearance before recording a Notice of Default as the statute requires and the result of their not doing so is an impairment of his ability to refinance and a tried-and-true servicer trick to shove a borrower into foreclosure. California Civil Code 2923.5 (a)-(g).

36.     Because of the damages caused to Plaintiff's credit and his ability to refinance after two years of missed payments, as well as a Notice of Default wrongfully recorded, Plaintiff seeks compensatory and exemplary damages as well as attorney fees.

**SECOND CAUSE OF ACTION**
*Intentional Misrepresentation*
**(Against Defendant SHELLPOINT)**

37.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

38.     One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. Cal. Civ. Code §1709.  Defendant SHELLPOINT could have sent a generic informational letter to Plaintiff about forbearance which would not have exposed them to any liability but instead they told Plaintiff he was *approved* for forbearance and suspending his ACH payments to lure him into reliance. (**Exhibit E [email 3-30-2020]**.)  They did this without any review. (**Exhibit E [email 3-30-2020]**.)  In December 2021, when Plaintiff tried to talk to Defendant SHELLPOINT's agent Anna Hernandez about the mistaken delinquency, she avoided responding to him. (**Exhibit O [Mortgage summary 11-11-2022]; Exhibit R [Hernandez email 12-1-2021]**.) A few months later, Defendant recorded a Notice of Default to further trap him into a financial corner so that he could not modify or refinance his mortgage elsewhere, but instead would be trapped either paying them back the full

amount or being foreclosed upon. (**Exhibit K [Notice of Default 9-8-2022].**)

Defendant SHELLPOINT did this knowing that *every loan in Defendant*

*SHELLPOINT's portfolio is a delinquent loan not eligible for Covid 19 relief by*

*deferment and forbearance*.

39.    These were intentional acts, outside the normal scope of their usual

activities, taken to induce his reliance and subject Plaintiff to risk, injury and

damages. (**Exhibit E [email 3-30-2020]**.)

40.    For the intentional nature of these actions, Plaintiff seeks compensatory and

exemplary damages as well as attorney fees.

**THIRD CAUSE OF ACTION**
*Promissory Estoppel*
(**Against Defendant SHELLPOINT**)

41.    Plaintiff hereby incorporates by reference each preceding paragraph as if the

same were fully set forth herein.

42.    The elements of promissory estoppel are (1) a promise, (2) the promisor

should reasonably expect the promise to induce action or forbearance on the part of

the promisee or a third person, (3) the promise induces action or forbearance by the

promisee or a third person (which we refer to as detrimental reliance) and 4)

injustice can be avoided only by enforcement of the promise. *Kajima/ Ray Wilson*

*v. Los Angeles County Metropolitan Transportation Authority,* 23 Cal. 4th 305,

310, 96 Cal. Rptr. 2d 747, 1 P. 3d 64 (200); see Rest. 2d Contracts § 90, subd. (1).

43.     In this case there was a promise made by letter, and reinforced by Defendant SHELLPOINT's agents, that Plaintiff was being considered for a loan modification and that Defendant would not foreclose until Plaintiff was evaluated for a meaningful forbearance that includes a deferment and/ or modification. (**Exhibit E [email 3-30-2020]**; **Exhibit J [email Shellpoint-6-22-2022].**) Defendant SHELLPOINT made these promises to induce Plaintiff's reliance while simultaneously recording a Notice of Default. (E**xhibit K [Notice of Default 9-8-2022]**.)  The Notice of Default that Defendant recorded without any interaction with Plaintiff included a fraudulent Due Diligence declaration that shows that Defendant had no intention of reviewing Plaintiff for forbearance or modification and that their only intention was to trick him and to foreclose. (E**xhibit K [Notice of Default 9-8-2022]**.)

44.     Injustice can only be avoided in this case by Defendant SHELLPOINT being forced to keep the promise they made to Plaintiff for a deferment pursuant to his forbearance and/ or modification.

### FOURTH CAUSE OF ACTION
*Violation of the Business and Professions Code §17200 et al.*
(**Against Defendant SHELLPOINT**)

45.     Plaintiff hereby incorporates by reference each preceding paragraph as if the same were fully set forth herein.

46.     Business and Professions Code §17200, the unfair competition law, permits civil recovery for "any unlawful, unfair or fraudulent business act or practice."

*Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 310, 173 Cal. Rptr. 3d 422, 431 (2014), <u>as modified on denial of reh'g</u> (July 22, 2014)

47.     The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527(1999). Business and Professions Code section 17200 is written in the disjunctive and establishes three varieties of unfair competition--acts or practices which are unlawful, or unfair, or fraudulent and a practice can be prohibited as 'unfair' or 'deceptive' *even if not 'unlawful'* and vice versa."'" (*Cal-Tech,* supra at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527, italics added; see also *Yanting Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370, 159 Cal.Rptr.3d 672, 304 P.3d 163.)

48.     It is a violation of Cal. Penal Code 115PC to make false statements on recorded documents such as the false declaration of due diligence that Defendant SHELLPOINT recorded along with a notice of default. (**Exhibit K [Notice of Default 9-8-2022]**.).

49.     It is a violation of California Civil Code 2923.5 (a)-(g) to record a notice of default prior to evaluating a borrower for loss-mitigation. (**Exhibit K [Notice of Default 9-8-2022]**.) It was also public policy to help borrowers during the pandemic, making Defendant SHELLPOINT's blatant deception and violation of statute especially vile and opportunistic.

50.     The two remedies available to redress violations of the UCL are injunctive relief and restitution. *Feitelberg* v. *Credit Suisse First Boston, LLC,* 134 Cal.App.4th 997, 1012 (2005). Restitution means "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co.* v. *Lockheed Martin Corp.,* 29 Ca1.4th 1134, 1149 (2003). Restitution necessarily requires that "money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset Corp. V. Superior Court*, 51 Ca1.4th 310, 336 (2011). Plaintiff therefore seeks r

51.     Plaintiff seeks an order that Defendant SHELLPOINT must provide him with a forbearance that defers his missed payments onto the end of his loan to restore him to the status quo. To also return him to the status quo, Plaintiff seeks an order that Defendant SHELLPOINT rescind the Notice of Default from the County Records so that he may restore his credit.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, as follows:

    a) Plaintiff seeks compensatory and exemplary damages and attorney fees for Defendant SHELLPOINT's intentional misrepresentation and negligence.

    b) Pursuant to the UCL, Plaintiff seeks restitution to the status quo via a forbearance and a rescission of the Notice of Default recorded against Clover Place.

    c) Plaintiff seeks attorney fees for the cost of bringing this action

    d) Plaintiff seeks exemplary damages in the amount of $275,000.00 for the intentional nature of defendants' fraud and as a deterrent.

Dated:  December 09, 2022         GOMEZ LAW, APC

                             By:_____

                             Susan M. Murphy.
                             Attorney for Plaintiff,
                             ANTHONY GIBSON

1

## <u>VERIFICATION OF COMPLAINT - ANTHONY GIBSON</u>

2  I, ANTHONY GIBSON, hereby declare:

3
4       I am the Plaintiff in the above-entitled action. I have read the forgoing

complaint and know the contents thereof. With respect to the causes of action alleged
5
by me, the same is true by my own knowledge, except as to those matters which are
6
7  therein stated on information and belief, and, as to those matters, I believe them to be

8  true.
9
       I declare under penalty of perjury under the laws of the State of California, that
10
11  the foregoing is true and correct.

12

13
Executed on ___12/09/22___ in the city of Los Angeles, California.
14

15

16

17                                          _____
                                            ANTHONY GIBSON, Plaintiff.
18

19

20

21

22

23

24

25

26

27

28
                                VERIFICATION OF COMPLAINT